## SNOW *v.* UNITED STATES.

### SAME *v.* SAME.

### SAME *v.* SAME.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued April 28, 29, 1886.—Decided May 10, 1886.

There is no provision of law under which this court can review a judgment of the Supreme Court of a Territory, on a conviction on an indictment for cohabiting with more than one woman, under § 3 of the Act of March 22, 1882, (22 *Stat.* 31.)

The case which makes the question of jurisdiction decided by the court is stated in its opinion. The question was not considered by counsel in argument: but on its own suggestion the court gave the parties an opportunity to file briefs, which was done by counsel for plaintiff in error.

*Mr. George Ticknor Curtis* and *Mr. Franklin S. Richards* for plaintiff in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

There are three writs of error to the Supreme Court of the Territory of Utah to review judgments of that court affirming judgments of the District Court of the First Judicial District of that Territory, rendered on convictions of the plaintiff in error on indictments founded on § 3 of the Act of March 22, 1882, 22 Stat. 31, for cohabiting with more than one woman. Each of the judgments imposed imprisonment for six months and a fine of $300.

The question of the jurisdiction of this court over these writs of error presents itself at the threshold. It was not suggested by the counsel for the United States at the argument, nor referred to by the counsel for the plaintiff in error, for the reason, as the court has been advised by both parties since the argument, that a decision on the merits was desired; and for the further reason, that this court, at the present term, in *Cannon* v. *United States*, 116 U. S. 55, took cognizance of a writ of error in a like case. But the question has presented itself to the court, and, since the argument, we have been furnished with a brief, on the part of the plaintiff in error, in support of the jurisdiction.

Section 702 of the Revised Statutes provides as follows: "The final judgments and decrees of the Supreme Court of any Territory, except the Territory of Washington, in cases where the value of the matter in dispute, exclusive of costs, to be ascertained by the oath of either party, or of other competent witnesses, exceeds one thousand dollars, may be reviewed and reversed or affirmed in the Supreme Court, upon writ of error or appeal, in the same manner and under the same regulations as the final judgments and decrees of a Circuit Court. In the Territory of Washington, the value of the matter in dispute must exceed two thousand dollars, exclusive of costs. And any final judgment or decree of the Supreme Court of said Territory in any cause [when] the Constitution or a statute or treaty of the United States is brought in question may be reviewed in like manner."

So much of this § 702 as relates to the Territory of Utah was carried into the section from § 9 of the Act of September 9,

1850, establishing a territorial· government for Utah, 9 Stat. 455, which provided that writs of error and appeals from the final decisions of the Supreme Court of the Territory should be allowed and might be taken to the Supreme Court of the United States, "where the value of the property or the amount in controversy, to be ascertained by the oath or affirmation of either party, or other competent witness," should exceed $1000, except only that in all cases involving title to slaves, and on any writ of error or appeal on a *habeas corpus* involving the question of personal freedom, no regard should be had to value.

So much of § 702 as provides for the review of "any final judgment or decree" of the Supreme Court of the Territory of Washington " in any cause when the Constitution or a statute or treaty of the United States is brought in question," is taken from the Act of March 2, 1853, establishing a territorial government for Washington, 10 Stat. 175, which, after providing that writs of error and appeals from the final decisions of the Supreme Court of the Territory should be allowed and might be taken to the Supreme Court of the United States, "where the value of the property, or the amount in controversy, to be ascertained by the oath or affirmation of either party, or other competent witness," should exceed $2000, went on in these words, which were not found in the prior act of 1850 in regard to Utah : "and in all cases where the Constitution of the United States, or Acts of Congress, or a treaty of the United States, is brought in question."

It is plain, that § 702, so far as Utah is concerned, does not cover the present cases, and that the provision in it in regard to cases where the Constitution, or an Act of Congress, or a treaty, is brought in question, has reference only to Washington and not to Utah.

Section 1909 of the Revised Statutes provides that writs of error and appeals from the final decisions of the Supreme Court of any one of eight named Territories, of which Utah is one, "shall be allowed to the Supreme Court of the United States, in the same manner and under the same regulations as from the Circuit Courts of the United States, where the value of the property, or the amount in controversy, to be ascertained by

the oath of either party, or of other competent witnesses, exceeds one thousand dollars," except that a writ of error or appeal shall be allowed " upon writs of *habeas corpus* involving the question of personal freedom." This section does not cover the present cases.

Section 1911 relates exclusively to writs of error and appeals from Washington Territory, and contains a provision that they shall be allowed " in all cases where the Constitution of the United States, or a treaty thereof, or Acts of Congress, are brought in question." That provision exists only in regard to Washington, and is not found in § 1909 in regard to the eight other Territories.

Section 709 of the Revised Statutes applies only to a writ of error to review a final judgment or decree in a suit in the highest court of a State.

There being thus no statute in force on December 1, 1873, to which time the enactments in the Revised Statutes related, giving to this court jurisdiction of a writ of error to the Supreme Court of Utah in a case like those before us, an act was passed on June 23, 1874, 18 Stat. 253, entitled " An Act in relation to Courts and judicial officers in the Territory of Utah," § 3 of which contained this provision : " A writ of error from the Supreme Court of the United States to the Supreme Court of the Territory shall lie in criminal cases, where the accused shall have been sentenced to capital punishment or convicted of bigamy or polygamy." The writ of error in *Reynolds* v. *United States*, 98 U. S. 145, was brought under that statute, the conviction being for bigamy under § 5352 of the Revised Statutes. This § 5352 was taken from § 1 of the Act of July 1, 1862, 12 Stat. 501, entitled " An Act to punish and prevent the practice of polygamy in the Territories of the United States and other places, and disapproving and annulling certain Acts of the Legislative Assembly of the Territory of Utah," which § 1 declares that every person having a husband or wife living, who shall marry any other person, whether married or single, in a Territory of the United States, shall (with certain exceptions) be adjudged guilty of bigamy. The act then proceeds to disapprove and annul all acts and

parts of acts theretofore passed by the legislative assembly of Utah, "which establish, support, maintain, shield, or countenance polygamy," with the proviso, that the act should "not affect or interfere with the right 'to worship God according to the dictates of conscience,' but only to annul all acts and laws which establish, maintain, protect, or countenance the practice of polygamy, evasively called spiritual marriage, however disguised by legal or ecclesiastical solemnities, sacraments, ceremonies, consecrations, or other contrivances." Hence, § 3 of the act of 1874, in speaking of "bigamy or polygamy," referred to the crime denounced by § 1 of the act of 1862, as carried into the Revised Statutes.

Then came the act of March 22, 1882, 22 Stat. 30, § 1 of which amended § 5352 of the Revised Statutes, the original and new §§ 5352 (leaving out the exceptions) being as follows, the parts in each which differ from the other being in italic:

| *Original.* | *New.* |
|---|---|
| "Every person *having* a husband or wife living, who marries another, whether married or single, in a Territory or other place over which the United States have exclusive jurisdiction, is guilty of *bigamy*, and shall be punished by a fine of not more than five hundred dollars, and by imprisonment for a term not more than five years." | "Every person *who has* a husband or wife living, who *in a Territory or other place over which the United States have exclusive jurisdiction, hereafter* marries another, whether married or single, *and any man who hereafter simultaneously, or on the same day, marries more than one woman*, in a Territory or other place over which the United States have exclusive jurisdiction, is guilty of *polygamy*, and shall be punished by a fine of not more than five hundred dollars, and by imprisonment for a term *of* not more than five years." |

Section 3 of the act of 1882 is the one on which the indictments in these cases were founded. It is in these words: "If

any male person, in a Territory or other place over which the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than three hundred dollars, or by imprisonment for not more than six months, or by both said punishments, in the discretion of the court." This section creates a new and distinct offence from bigamy or polygamy, one which is declared to be a misdemeanor, (there having been and being no such declaration as to bigamy or polygamy,) and the punishment for which is much less than the punishment for bigamy or polygamy. The act of 1882 made no provision for any writ of error from this court in a case under section 3, while, by the then existing act of July 23, 1874, a writ of error could lie on a conviction of bigamy or polygamy. By no proper construction can the offence of cohabiting with more than one woman be regarded as identical with the offence of bigamy or polygamy. The act of 1882, in §§ 1, 3, and 5, classes bigamy or polygamy as a different offence from the offence of cohabiting with more than one woman; and we cannot regard a statutory provision for a writ of error on a conviction of bigamy or polygamy as authorizing one on a conviction, under § 3 of the act of 1882, of cohabiting with more than one woman.

On the 3d of March, 1885, the following act was passed, 23 Stat. 443 : "No appeal or writ of error shall hereafter be allowed from any judgment or decree in any suit at law or in equity in the Supreme Court of the District of Columbia, or in the Supreme Court of any of the Territories of the United States, unless the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars." Sec. 2. "The preceding section shall not apply to any case wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States ; but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute."

This act is relied on by the plaintiff in error as covering the present cases. The first section of it applies solely to judg-

ments or decrees in suits at law or in equity, measured by a pecuniary value. If the second section applies to a criminal case wherein "is drawn in question the validity of a" "statute of, or an authority exercised under, the United States," without regard to whether there is or is not any sum or value in dispute, the question still remains for consideration, whether, in the present cases, the validity of a statute of the United States, or the validity of an authority exercised under the United States, is drawn in question.

The peculiar language of § 2 is to be noted. In § 709 of the Revised Statutes, allowing a writ of error to review a final judgment or decree in any suit in the highest court of a State, in which a decision in the suit could be had, the language is, "where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is against their validity." This language is taken from § 2 of the act of February 5, 1867, 14 Stat. 386, where it is reproduced *verbatim* from section 25 of the Judiciary Act of September 24, 1789, 1 Stat. 85. In § 2 of the act under consideration the words "and the decision is against their validity" are not found. In § 1911 of the Revised Statutes, in regard to Washington Territory, the language, adopted substantially from the act of March 2, 1853, 10 Stat. 175, is, "in all cases where the Constitution of the United States, or a treaty thereof, or acts of Congress, are brought in question;" and is not limited to the case of a decision against the validity of the act. Section 2 of the act of 1885 applies not where merely an act of Congress is brought in question, but only where the validity of a statute of the United States is drawn in question, or where the validity of an authority exercised under the United States is drawn in question; but this is not limited by the requirement that the decision shall have been against such validity.

In the present cases, the validity of a statute of the United States is not drawn in question. No such question is presented by the bills of exceptions, or the requests for instructions, or the exceptions to the charges, or anywhere else in the records. Nor is the validity of an authority exercised under the United States drawn in question. The plaintiff in error contends that

the construction of the act of 1882 is drawn in question, and also the authority exercised under the United States by which he was tried and convicted; that the authority of the United States is invoked to deprive him of his liberty, in a court established by Congress, and acting solely by Federal power.; and that the question is, whether the authority exercised by the court under the act of 1882 is a valid authority, and within the scope of that act, because the contention is that the court misconstrued the statute and acted beyond the authority which it conferred. The authority exercised by the court in the trial and conviction of the plaintiff in error is not such an "authority" as is intended by the act. The validity of the existence of the court, and its jurisdiction over the crime named in the indictments, and over the person of the defendant, are not drawn in question. All that is drawn in question is whether there is or is not error in the administration of the statute. The contention of the plaintiff in error would allow a writ of error from this court in every criminal case in a Territory where the prosecution is based on a statute of the United States; and, indeed, might go still further, for the authority of every court sitting in a Territory is founded on a statute of the United States. From the fact that a given criminal case involves the construction of a statute of the United States, it does not follow that the validity of "an authority exercised under the United States" is drawn in question.

There is a decision of this court on this point in *Bethell* v. *Demaret*, 10 Wall. 537. The 25th section of the Judiciary act of 1789 allowed a writ of error from this court to the highest court of a State, "where is drawn in question the validity of a statute of, or an authority exercised under, any State; on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of such their validity." The case referred to was a writ of error to the highest court of a State, and it was contended that that court, in rendering the decision complained of, acted under the authority of the State, and so there was drawn in question an authority exercised under the State, which, in the particular

case, impaired the obligation of a contract, and was repugnant
to the Constitution of the United States, and the decision was
in favor of the validity of such authority. To this view, this
court, speaking by Mr. Justice Nelson, gave this answer:
"The authority conferred on a court to hear and determine
cases in a State is not the kind of authority referred to in the
25th section; otherwise, every judgment of the Supreme Court
of a State would be re-examinable under the section."

In the recent case of *Kurtz* v. *Moffitt*, 115 U. S. 487, 498, it
was said by this court, speaking by Mr. Justice Gray, as the
result of the examination of numerous cases which are there
cited, that "a jurisdiction conferred by Congress upon any
court of the United States, of suits at law or in equity, in
which the matter in dispute exceeds the sum or value of a
certain number of dollars, includes no case in which the right
of neither party is capable of being valued in money." In
each of the present cases the pecuniary value involved does
not exceed $300, even if the fine could be called a "matter in
dispute," within the statute. As to the deprivation of liberty,
whether as a punishment for crime or otherwise, it is settled
by a long course of decisions, cited and commented on in
*Kurtz* v. *Moffitt, ubi supra,* that no test of money value can be
applied to it, to confer jurisdiction.

We conclude, therefore, that we have no jurisdiction of
these writs of error, and that they must be dismissed for that
reason.

It is urged, however, that this court took jurisdiction of the
writ of error in *Cannon* v. *United States,* 116 U. S. 55, and
affirmed the judgment on a conviction under the same § 3 of
the act of 1882. The question of jurisdiction was not con-
sidered in fact in that case, nor alluded to in the decision, nor
presented to the court by the counsel for the United States,
nor referred to by either party at the argument or in the
briefs. Probably both parties desired a decision on the merits.
The question was overlooked by all the members of the court.
But, as the case was decided at the present term, and the
want of jurisdiction in it is clear, we have decided to vacate
our judgment, and recall the mandate and dismiss the writ of

error for want of jurisdiction, in order that the reported decision may not appear to be a precedent for the exercise of jurisdiction by this court in a case of the kind.

*Dismissed for want of jurisdiction.*