[Crim. No. 9938. First Dist., Div. One. May 10, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM J. LOCKETT et al., Defendants and Appellants.

**COUNSEL**

Williams & James, Benjamin D. James, Jr., and Terry A. Francois for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward P. O'Brien and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.—** Defendants William Lockett and Alberta Lockett (hereafter for convenience, "William" and "Alberta"), husband and wife, were each convicted, after a trial to the court, of the crime of conspiracy,[1] a felony (Pen. Code, § 182), to violate Welfare and Institutions Code section 11482, and of 10 misdemeanor counts of violation of the latter section. (Hereafter all statutory citations, unless otherwise noted, will be to Welfare and Institutions Code.) Each was placed on probation; conditions of probation were that William serve five months in the county jail (with recommendation for the work furlough program), and that Alberta serve 60 days (on weekends) in the county jail. Each has appealed from the order granting probation (termed judgment in the notice of appeal).

Welfare and Institutions Code section 11482 provides: "Any person other than a needy child, who willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor."

I. ██ Our first problem is the determination whether substantial evidence supported each of the convictions. We consider the pertinent evidence, as required, in a light most favorable to the People. (*People v. Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People v. Caritativo*, 46 Cal.2d 68, 70 [292 P.2d 513].)

Alberta was the mother of four children. Her husband William was

---

[1]A husband and wife, conspiring only between themselves, may be guilty of a criminal conspiracy. (*People v. Pierce* (1964) 61 Cal.2d 879 [40 Cal.Rptr. 845, 395 P.2d 893].)

neither their natural nor adoptive father. The parties lived together with the children. Application was made for public aid for the children under the Burton-Miller Act, found in sections 11200-11507.

On their initial application to the county welfare department both defendants represented that William's only income "was from cutting up old cars and disposing of the metal in various junkyards." At the time he was in fact an employee of the City and County of San Francisco earning approximately $400 per month. Thereafter defendants were required to make written reports for the purpose of determining continued eligibility of the children for public aid. Ten of these reports are the subject of the misdemeanor counts of the information. The contents of all of these reports appear to be in the handwriting of the same person, or at least the trial court could, and presumably did, so find. (See Evid. Code, § 1417.) Eight of them were signed by Alberta; two were signed by William. They reported monthly income to William from automobile salvaging in amounts ranging from $40 to $110. William's true monthly earnings during the period covered by the reports varied between $476 and $670.

One of the reports filled out and signed by Alberta under penalty of perjury was a "True Statement of Facts Relating to Eligibility for Aid to Families with Dependent Children." In this report she declared that she and William neither owned nor had an interest in, real property. In fact she and William were at the time owners as joint tenants of a parcel of real property in San Mateo County. In it she also declared that William's earnings for the preceding three months were $280; in fact they were approximately $1,926.

Throughout the period in question defendants received aid for the four dependent children in amounts of $131.50 per month. From the evidence it may clearly be inferred that payments of such amounts were not legally permissible, and that had the true facts been known to the welfare department payments in such amounts would not have been made.

■ To establish a conspiracy it is not necessary to establish that the parties entered into a formal written or oral agreement. It is sufficient that the People show a mutual understanding, and this may be established by circumstantial evidence. (*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 58 [216 P.2d 859].)

The evidence before the trial court was obviously sufficient reasonably to establish an understanding between defendants, that by false representations and with intent to deceive, they would obtain welfare aid to which they and the children were not legally entitled, in violation of section

11482. The conspiracy conviction was accordingly supported by substantial evidence.

We now consider whether the 10 misdemeanor convictions were also so supported.

As indicated, eight of the ten subject false representations were made *directly* by Alberta; two were so made by William. No problem appears as to the representations actually made by each defendant; the issue is whether the other was also legally responsible for those offenses.

Penal Code section 31 provides: "All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

■ And it has been repeatedly stated, " ' "Where two or more persons enter upon a common undertaking, . . . and that undertaking contemplates the commission of a criminal offense, each of the parties to the undertaking is equally guilty of the offense committed whether he did an overt act or not." ' " (*People* v. *Gonzales,* 4 Cal.App.3d 593, 600 [84 Cal.Rptr. 863]; *People* v. *Eskew,* 206 Cal.App.2d 205, 207 [23 Cal.Rptr. 466]; *People* v. *Moore,* 120 Cal.App.2d 303, 306-307 [260 P.2d 1011].)

■ Applying these rules to the facts of the case at bench it would appear that each of the defendants was a principal to the misdemeanor offenses directly committed by the other. Therefore substantial evidence also supports the misdemeanor convictions.

II. Relying on *Lewis* v. *Martin* (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282], defendants contend that since William was the nonadoptive stepfather of the subject children, he was under no duty to support them, and his misrepresentations were accordingly immaterial and constituted no crime.

*Lewis* v. *Martin* struck down certain language of section 11351 providing that payments to a "needy child [who] lives with his mother and a stepfather or an adult male person assuming the role of spouse to the mother although not legally married to her, . . . shall be computed after consideration is given to the income of the stepfather" or such other adult

male person.[2] The provision was found to be incompatible with pertinent federal law and regulations. The court held (pp. 559-560 [25 L.Ed.2d p. 567]): "In the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a non-adopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a [man assuming the role of spouse]—whatever the nature of his obligation to support."

But defendants misconstrue the reach of *Lewis* v. *Martin*. As relevant here, that case simply holds that the *income of a nonadoptive stepfather,* who is not in fact contributing to the support of his wife's children, may *not* be considered in computing welfare benefits to those children. The decision does not purport to deny to California, in determining the amount of "needy children" benefits, the right to consider the *income of the mother* —in this case one-half of her husband William's earnings.

Further, the *Lewis* v. *Martin* court in no way impugned, or even mentioned or considered, another provision of section 11351. This language, which had remained in the section since its enactment in 1965, states: *"However, such liability [of a nonadoptive stepfather] for support shall not exceed the wife's community property interest in his income."* Not having been considered, under well-known rules this provision was in no way affected by the *Lewis* v. *Martin* decision (see *United States* v. *Tucker Truck Lines,* 344 U.S. 33, 38 [97 L.Ed.2d 54, 58-59, 73 S.Ct. 67]; *Webster* v. *Fall,* 266 U.S. 507, 511 [69 L.Ed. 411, 412-413, 45 S.Ct. 148]; *United States* ex rel. *Arant* v. *Lane,* 245 U.S. 166, 169-170 [62 L.Ed. 223, 224-225, 38 S.Ct. 94]; *Tefft, Weller & Co.* v. *Munsuri,* 222 U.S. 114, 119-120 [56 L.Ed. 118, 120, 32 S.Ct. 67]; *Snow* v. *United States,* 118 U.S. 346, 354-355 [30 L.Ed. 207, 209-210, 6 S.Ct. 1059]).

As is well known, in California the earnings of a husband during marriage are the community property of the parties. (Civ. Code, § 687.) The interest of the wife in such community property is "present, existing and equal" but "under the management and control of the husband." (Civ. Code, § 5105, formerly § 161a.) The special provision of section 11351, which we have emphasized in the preceding paragraph, simply abridged the nonadoptive stepfather's "management and control" of his wife's community property interest in his earnings. It did no more than require that the *wife's* community property interest shall be liable for the support of

---

[2]In 1969, and before the decision in *Lewis* v. *Martin,* section 11351 was amended to eliminate reference to "adult male person assuming the role of spouse to the mother although not legally married to her." The section was repealed in 1971, *after* the *Lewis* v. *Martin* decision.

*her* children. The provision was patently sound and reasonable; if it did not state the law, then a nonadoptive stepfather could deny his wife's children any support by withholding funds in which their mother had "present, existing and equal" ownership.

██ The false representations of the defendants were, in any event, calculated to conceal material facts to obtain welfare aid, i.e., the community property interest of the mother, Alberta, in her husband's earnings, which interest was liable for the support of her children. The instant contention is devoid of merit.

III. Defendants next urge that Alberta's false report as to the parties' ownership of real property constituted no crime. They argue that the evidence was immaterial since no showing was made that the property was worth more than $5,000, at which point it becomes a consideration in the granting of welfare aid. (See § 11255.)

We observe that the false real property statement was one of two false declarations of Alberta on that report. The other falsity related to William's income, and was clearly admissible evidence. ██ But on the question of real property ownership the report was also evidentially admissible; it had a logical tendency to prove a fact in dispute, the existence of the "intent to deceive" required by the statute. (See Evid. Code, § 351.) ██ Furthermore, this false statement was alleged as an overt act of the charged conspiracy; it was admissible as such proof. Such an overt act need not itself be of a criminal nature. (*People* v. *Aday,* 226 Cal.App.2d 520, 533-534 [38 Cal.Rptr. 199].) This contention also is without substance.

IV. Defendants' final contention relates to the use in evidence of defendants' state income tax returns.

These papers were admitted under the apparent authority of section 11483. No claim is made that they were not admissible under that section for the purpose of prosecution of "any person [who] has, by means of false statement or representation . . . obtained aid for a child" under the Burton-Miller Act.

██ The returns disclosed the parties' true community income, and they indicated that William was in fact supporting the children. The contention is that they were inadmissible for this latter purpose. The argument runs

counter to the case of *Lewis* v. *Martin, supra,* on which defendants principally rely. There, as we have pointed out, it was held that upon "proof of actual contribution" by a nonadoptive stepfather, the welfare agency could have considered *his* income also in fixing the amount of aid for the children. Further, the record indicates no trial request that the evidence be allowed only for a limited purpose. Even assuming error, arguendo, it was obviously not prejudicial.

The orders granting probation (called judgment on the notice of appeal) are affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 5, 1972. Peters, J., was of the opinion that the petition should be granted.