[Crim. No. 25837. Second Dist., Div. Two. Mar. 25, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROSE DIXON, Defendant and Appellant.

**COUNSEL**

Ardith V. Javan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Anthony D. Blankley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Rose Dixon, also known as Rose Easley, appeals the judgment (order granting probation) after her conviction for welfare fraud. She was charged with fraud in obtaining aid for her dependent children (Welf. & Inst. Code, § 11483) and in obtaining health care for herself (§ 14014).[1] In a nonjury trial she was acquitted on the first charge and convicted on the second.

---

[1] Unless otherwise noted, statutory references are to Welfare and Institutions Code. Dollar amounts are given in rounded figures.

The evidence, viewed in the light most favorable to the judgment, showed that Dixon separated from her husband and began living with Joseph Easley in 1964 or 1965. Easley fathered her two children, one born in 1967, the other in 1968. In November 1969 she rented a house in the name of Joseph and Rose Easley; the landlady saw Easley at the house on two occasions, and she received money orders for rent from both her and Easley. She told an investigator that Easley was at her house four or five days a week, stayed overnight occasionally, and received his mail there. Easley worked for Hughes Aircraft with gross income of $7,900 in 1970, $12,500 in 1971, and $12,500 in 1972. On his state income tax returns for those years he claimed Dixon as his wife and their two children as dependents, and he listed their address as his.

In December 1969 Dixon applied to the Los Angeles County Department of Public Social Services for welfare for herself and her children. She signed an "affirmation for eligibility" under penalty of perjury, declaring that Joseph Easley was absent from her home, she had no income, and she owned no real or personal property. In June 1970, November 1970, April 1971, September 1971, and May 1972 she again signed affirmations of eligibility denying ownership of any property and denying the presence of Joseph Easley in her home. But in September 1971 Easley took title to a house in joint tenancy with Rose Easley, as husband and wife, and made a down payment of $800 with money borrowed from his credit union. In 1972 he purchased a 1970 Mercury automobile in the name of Joseph or Rose Easley and paid the entire purchase price with money borrowed from his credit union. Between December 1969 and December 1972 the county paid Dixon $7,600 in aid for dependent children and $2,100 for her own health care.

The trial court found that Dixon had violated section 14014 by making false affirmations of eligibility. That section provides: "Any person receiving health care for which he was not eligible on the basis of false declarations as to his eligibility shall be liable for repayment and shall be guilty of a misdemeanor or felony depending on the amount paid in his behalf for which he was not eligible, as specified in Section 487 of the Penal Code." The court thought it unnecessary for the prosecution to prove Dixon's ineligibility in fact for welfare health care.

### DISCUSSION

Our interpretation of section 14014 does not correspond with that of the trial court. As we read the statute it condemns the *receipt* of health

care *for which a person is not eligible.* The false declarations are specified means to achieve a forbidden end, which is the receipt of benefits to which the person is not entitled. ■ Expressed another way, proof of two factors is requisite to establish the offense: (1) the false declarations, and (2) the receipt of ineligible health care. At bench, only the first of these factors was proved, for it was never shown that Dixon received health care for which she was not eligible. An applicant may hold title to real and personal property and remain eligible for health care benefits if the equity in the property held does not exceed the specified limit of $5,000 for real property (§ 11255 and $600 for personal property (§ 11257). (See e.g., §§ 14005.7, 14005.10, 15006.) The welfare fraud investigator who handled Dixon's case never determined the amount of Dixon's interest in the house and automobile. And while the absence of Easley from Dixon's home was a condition of eligibility for aid to dependent children (§§ 11250, 11351.5), her own eligibility for health care was not similarly circumscribed. (§ 14005 et seq.) The evidence before the court, if believed, suggests that neither the real property limit of $5,000 above encumbrances nor the personal property limit of $600 had been exceeded. No other evidence was introduced to establish Dixon's ineligibility for health care.

Respondent argues that although Dixon may have been financially eligible for welfare health care, she was not procedurally eligible for such care, because she failed to report relevant information to the county as required by state and county welfare regulations. The argument is that the false reporting creates the ineligibility. ■ But a criminal statute cannot be amended by regulations. (Cf. *People v. Samuel,* 245 Cal.App.2d 210, 228 [53 Cal.Rptr. 887].) The Welfare and Institutions Code uses the words "entitlement" and "eligibility" and "qualification" interchangeably (see §§ 11151, 11482-11483, 11506, 12050, 12056, 12058, 12550-12551). Eligibility for health care is defined by sections 14005 to 14005.7, and these sections do not establish ineligibility based on an applicant's failure to meet his reporting responsibilities. We think the target of section 14014 is the false receipt of health care and not the false report that may make the false receipt possible.

It is a reasonable inference from the evidence that Dixon and Easley were playing fast and loose with the welfare and public assistance laws. The evidence adduced might have justified Dixon's conviction for perjury (§ 11054) or for false representations to obtain aid (§ 11482; *People* v. *Gilbert,* 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580];

*People* v. *Lockett,* 25 Cal.App.3d 433, 440 [102 Cal.Rptr. 41]), but she was not prosecuted for those offenses. Since her conviction for violation of section 14014 is defective in proof, the judgment (order granting probation) is reversed.

Compton, J., and Beach, J., concurred.