SANDRA M. COSTA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Costa v. Commissioner
Docket No. 6652-88
United States Tax Court
T.C. Memo 1990-572; 1990 Tax Ct. Memo LEXIS 644; 60 T.C.M. (CCH) 1178; T.C.M. (RIA) 90572; October 31, 1990, Filed *644 Decision will be entered for the petitioner. P's son was arrested in 1984 while driving H's (P's husband) car containing narcotics and cash. In 1986, H was convicted on narcotics related charges. H subsequently fled prosecution and was a fugitive from justice at the time of this proceeding. In 1984 P and H were married but did not have a relationship of a nature which would allow us to attribute knowledge of H's activities between them. R reconstructed H's 1984 income using the cash expenditures method. Thereafter, R issued a statutory notice to P imputing one-half of such reconstructed income to her on the basis of California community property law. Held, portions of P's affidavit and portions of transcripts from prior proceedings otherwise excludable as hearsay are not admissible under the Rule of Completeness, pursuant to Fed. R. Evid. 106; United States v. Burreson, 643 F.2d 1344 (9th Cir. 1981). Held further, in an illegal income case arising in a community property jurisdiction and where no returns are filed, a proper evidentiary predicate linking a husband to an illegal income-producing activity will entitle respondent to a presumption of correctness for a statutory notice *645 issued to the wife. Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979). In contesting such notice, wife succeeds to and is subrogated to any and all of husband's defenses and evidentiary entitlements. Held further, illegal income can be community income under California law. Held further, sec. 66(c), I.R.C., case law analyzed and distinguished. Sec. 6013(e)(1)(C), I.R.C., standard applied in determining whether nonfiling innocent spouse in a community property jurisdiction knew or had reason to know of items of community income. P did not know or have reason to know of items of community income in 1984 pursuant to sec. 66(c), I.R.C.
John E. Lahart, for the petitioner. James W. Clark, for the respondent. GERBER Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax Year
Deficiency
[1] *646 Sec. 6651 [2] Sec. 6653(a) Sec. 6654
Sec. 6661
1984
$ 80,972.00
$ 17,993.00
$ 4,049.00
$ 4,383.00
$ 20,243.00
1986
$ 195,682.00
$ 48,921.00
$ 9,784.00
$ 9,469.00
$ 48,921.00
After concessions, [3] *647 five issues remain for our consideration. Three of the issues concern the tax liability and two concern the admissibility of evidence. As to the tax liability we must consider: (1) Whether petitioner had unreported community property income in 1984; (2) whether the relief provisions of section 66(a) or (c) are applicable; and (3) whether petitioner is liable for additions to tax in 1984 under sections 6651(a)(1), 6653(a), 6654, and 6661. As to the evidentiary matters, we must also consider: (1) Whether the remainder of an otherwise inadmissible hearsay document is admissible under Federal Rules of Evidence (Fed. R. Evid.) 106, where portions of the document have been admitted into evidence under an exception to the Hearsay Rule or for purposes of impeachment; and (2) whether prior recorded testimony from an unrelated proceeding is admissible pursuant to Fed. R. Evid. 801(d)(1). FINDINGS OF FACT The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioner resided in Anselmo, California, at the time the petition in this case was filed. She left high school at the age of 17 and married Douglas Costa (sometimes referred to as Mr. Costa) in the 1960's. At the time of her marriage, petitioner was pregnant with the Costas' only child, Kurt Costa. Initially, Douglas Costa worked in construction for Kurt Leswing. Eventually, he acquired his contractor's license and was employed by Kurt Leswing in the business of purchasing, remodeling, and selling real estate properties. Mr. Costa also ran his own business, the Costa Construction Company. In the course of their business relationship, Douglas Costa entered into *648 several partnerships with Kurt Leswing for the purchase and development of real estate. On occasion, Mr. Costa invested in these ventures on behalf of himself and petitioner and both he and petitioner were partners in some of these joint ventures. In the early 1970's, the Costas purchased and remodeled a residence at 454 Scenic Road in Fairfax, California (Scenic Road). At one point, the home contained office space for the Costa Construction Company. Throughout their marriage, the couple had a history of separating and reconciling. In 1981, Douglas Costa was involved in a motorcycle accident. The accident caused permanent leg injury and left Mr. Costa with a severe limp which periodically required him to use a cane. As a result of marital problems, which were compounded by this accident, petitioner moved to a separate residence beginning early in 1982. Mr. Costa also left the Scenic Road home during 1982 and resided with a girlfriend. At some point thereafter, the couple consulted an attorney regarding a legal separation, but a formal termination or separation was never obtained. At the time of trial in this case, Sandra Costa was still legally married to Douglas Costa. Sometime *649 in 1983, petitioner resumed her residence at Scenic Road. She continued to live there with her son Kurt Costa throughout 1984. In 1984, Douglas Costa visited Scenic Road on an intermittent basis. Although Mr. Costa traveled a great deal during this period, he visited Scenic road on several occasions. Mr. Costa also utilized the Scenic Road address for purposes of receiving mail and he kept documents there. He also received telephone messages and kept clothes at Scenic Road. Mr. Costa kept a key to the residence and came and went at his convenience. Occasionally he used petitioner's car. Although Mr. Costa had access to the Scenic Road residence and spent some time with petitioner, she did not acquire firsthand knowledge of Mr. Costa's activities outside of the residence, including any business activity. During 1984, Mr. Costa made the house payments, and paid petitioner approximately $ 700 to $ 800 a month in support and for household expenses. This money was usually paid to her in cash or by cashier's check. Mr. Costa generally took care of all bills received at the Scenic Road address. Based upon a December 7, 1984, warrant, petitioner's residence was searched and evidence *650 of several joint bank accounts was discovered. There is no indication that these accounts had any activity during the 1984 taxable year or that respondent relied upon them in connection with the 1984 reconstruction of income. During January 1983, petitioner and Mr. Costa jointly signed a promissory note for $ 30,000. In January 1984, Douglas Costa purchased a 1984 Mercedes Benz for $ 60,742. The car was registered and titled in the names of both Sandra and Douglas Costa and all purchase documents listed the Scenic Road address. Mr. Costa paid cash for the automobile using cashier's checks, all of which were in amounts less than $ 10,000. Petitioner was not aware that the automobile was titled in her and her husband's names nor was she aware of the method of payment. Petitioner did not use this automobile and it was treated as belonging solely to Douglas Costa. In April 1984, Douglas Costa made two $ 9,000 payments, also by cashier's check, to the Internal Revenue Service, which were posted as estimated tax payments to the joint account of Douglas and Sandra Costa for the year ended December 31, 1984. Petitioner was also aware that in 1984, Mr. Costa invested $ 25,000 in a joint *651 venture with the Leswings in a business called "Mr. Chips." In October 1982, petitioner and Douglas Costa received $ 223,882.88 representing a portion of the proceeds from the sale of certain joint venture realty. Petitioner had requested her husband to invest her share of these proceeds on her behalf. In September 1984, Sandra Costa obtained $ 5,000 from Douglas Costa and loaned it to William Rowe. The $ 5,000 was part of petitioner's share of the proceeds from the sale of this property. Despite their marital differences, petitioner also occasionally traveled with Douglas Costa for vacation trips. Together they made trips to Miami and Mexico, some as recent as 1985 and 1986. In 1985, the couple took a 7-day trip to Hawaii where they shared a hotel room. Douglas Costa also offered petitioner a choice of vacations to places like Hawaii, the Bahamas, and South America as birthday and/or Christmas gifts in 1982 or 1983. It is not clear, however, whether petitioner ever took advantage of this offer. In the fall of 1984, the Costas were booked on a flight to Paris. As petitioner was without other sources of income, trips would have been paid for by Mr. Costa. Occasionally, petitioner *652 accompanied Mr. Costa on trips to Reno or Lake Tahoe, where Mr. Costa gambled. On those occasions she refused to gamble at the same table with Mr. Costa because she "usually got hit" every time he lost. On December 5, 1984, Douglas Costa left his car at the Scenic Road residence and borrowed Mrs. Costa's car for an unspecified purpose. The Mercedes was parked in front of the house with Mr. Costa's laundered clothes hanging inside. On the evening of the same day, Kurt Costa borrowed his father's car to meet Kurt's business associate at the San Francisco Airport. This was the only occasion on which Kurt drove the Mercedes without permission from or without being accompanied by his father. Later that night, petitioner was informed that Kurt Costa had been arrested while driving his father's car and that the car contained illegal drugs. Petitioner was also informed that at the time of Kurt's arrest the Mercedes contained narcotics with an estimated street value of $ 61,400, currency in the amount of $ 134,850, and several weapons and ammunition. Also present in the car at the time of the arrest were dry-cleaned clothes and several canes belonging to Douglas Costa. The police also *653 found a fingerprint on the narcotics material in the car at the time of Kurt's arrest which they later identified as that of Douglas Costa. Since the car belonged to Douglas Costa, petitioner suspected that the money and drugs in the car were his also. Subsequent to his arrest, Kurt Costa was charged with narcotics and traffic violations. He was tried thereon and later acquitted on the narcotics charges by the State of California. As a result of the arrest, the residence at 454 Scenic Road was searched by officers of the San Francisco Police Department on December 7, 1984. No drugs were found in the house, but the search turned up records (which did not concern illegal drugs) belonging to Douglas Costa individually and Douglas and Sandra Costa jointly. Among the documents found in the house were cash credit and cash deposit receipts in Douglas Costa's name from the Hotel King Kamehameha and Caesars Tahoe gambling resorts, California vehicle registration and ownership certificates, joint account checkbooks, and a copy of the promissory note executed between Sandra Costa and William Rowe. About 18 months after Kurt's arrest, in June 1986, Douglas Costa entered into transactions *654 to purchase marijuana and to sell cocaine to Larry Lamberson. Mr. Lamberson was a Drug Enforcement Agency (DEA) agent operating undercover out of Austin, Texas. He had been with the DEA for 16 years. In the course of their transactions, Douglas Costa informed Agent Lamberson that he had been involved in narcotics smuggling for numerous years. Agent Lamberson believed that Mr. Costa was the head of a drug organization involving several people. His belief was based upon his observations that Mr. Costa had knowledge of DEA surveillance devices and dealt in large quantities of narcotics indicating a large-scale narcotics network which required 4 to 5 years to build. In July 1986, Douglas Costa was arrested in Texas and charged with cocaine distribution and conspiracy to deal in narcotics. Petitioner visited her husband in a Texas prison after his arrest and attended part of his trial and sentencing. As a result of these proceedings, Douglas Costa was convicted and sentenced to 45 years in prison. Thereafter, Mr. Costa was returned to San Francisco to be tried by the State of California in connection with the 1984 arrest of Kurt Costa. He was released on bail and fled from prosecution. *655 At the time of trial in this case, Mr. Costa's whereabouts were unknown and he was a fugitive from justice. Petitioner did not file, either individually or jointly with her husband, a Federal income tax return for the 1984 taxable year. She has not filed a Federal tax return in any capacity for any year after 1977. She became aware, however, that Mr. Costa had failed to file a return for a taxable year ended prior to 1984 and of collection proceedings against them for an earlier tax year. Although Mrs. Costa was unemployed during 1984 and earned no income, she worked at some time prior to 1984 as the bookkeeper for the Costa Construction Company. As a result of respondent's investigation of Kurt Costa's drug arrest in December 1984, income tax deficiencies were determined against Mr. and Mrs. Costa. Respondent's determination was based on an investigation undertaken by Revenue Agent Frank Thatcher and upon income schedules prepared by him. In the course of his investigation, Agent Thatcher sent five or six certified letters to the Costas seeking an audit interview with them. All of the letters were returned unclaimed. Lacking records or any other information from the taxpayer, *656 he prepared an income schedule based upon the currency, contraband, and other income items. The items and their value were obtained from the police report and from documents obtained through agents of respondent's Criminal Investigation Division. Agent Thatcher also consulted other accessible documents including Currency Transaction Reports and IRS Transcripts of Accounts showing estimated tax payments by Mr. Costa. Based on the large amounts of cash, the presence of drugs, and the absence of returns, Mr. Thatcher concluded that there was sufficient evidence of illegal activity to justify the use of the cash expenditures method of income reconstruction. Mr. Thatcher also based this determination on Kurt Costa's statement made at the time of his arrest and contained in the San Francisco Police Report that "None of the stuff in this car belongs to me. It belongs to my Dad." Agent Thatcher also calculated living expenses based on the Bureau of Labor Statistics for a family of three. This aspect of the income reconstruction was computed for 1984 using the 1981 national statistics, adjusted by the annual Consumer Price Index increase. This expense was then added as a separate item *657 to all other cash expenditures. A collection case was pending against the Costas for the 1982 tax year. Agent Thatcher did not, however, consult with the collection division regarding the case prior to preparing income schedules for the 1984 year because he was unaware of the collection case at the time of his investigation. Based on Mr. Thatcher's schedules, respondent subsequently issued a statutory notice of deficiency to Douglas Costa for the full amount of the tax on the reconstructed income. Respondent also issued a separate notice to Sandra Costa. Her deficiency notice was based on respondent's determination that Mr. Costa had $ 339,663 in unreported income, one-half of which, or $ 169,832, was imputed to petitioner under California community property law as follows: 1/20/84
1984 Mercedes Benz 500 SEC
$ 60,742 4/18/84
Two Estimated Tax Payments
18,000 5/15/84
"Mr. Chips" Partnership Contribution
25,000 6/29/84
Hotel King Kamehameha Cash Credit
700 7/14/84
Caesars Tahoe Cash Deposit Receipt
8,000 9/27/84
Promissory Note (Loan) to W. Rowe
[4] *658 5,000 12/06/84
Cash Bail Posted for Kurt Costa
25,971 12/06/84
Cash Seized from Mercedes
134,850 12/06/84
Drugs Seized from Mercedes
61,400 $ 339,663 X 50%
$ 169,832  Respondent also imputed $ 11,712 to petitioner as one-half of total reconstructed personal living expenses. Petitioner timely filed a petition with this Court for a redetermination of the deficiency. Thereafter, she filed a motion to shift the burden of going forward with the evidence to respondent. After a hearing on the issue, that motion was denied. However, the parties were instructed to further develop the issue at trial and on briefs, if further consideration of the ruling was necessary or appropriate. OPINION Background
This case presents two evidentiary issues. The circumstances of this case dictate that we first consider these issues before attending to the central merits. However, a synopsis of the facts is helpful to provide *659 a better understanding of the issues. Petitioner and her son, in his upper teens, lived together, but apart from the husband/father. Petitioner had no source of income other than what she received from her husband. Husband/father, on an intermittent basis, continued his marital relationship with petitioner and resided occasionally with petitioner and son. Husband paid all household expenses and occasionally took petitioner on trips for Christmas, birthdays and other occasions. As of the time a 1984 return was due, petitioner had not filed a return for 1984 and was not aware of whether husband filed a return for 1984. Petitioner became aware that her husband could have been involved with drugs during 1984, but she had no knowledge of the amounts of income, if any, that he received either from trafficking in drugs or from his construction business. A. Evidentiary Matters.
The rules of evidence applied by this Court are statutorily prescribed to be the rules applicable in trials without jury in the United States District Court for the District of Columbia. Section 7453; Rule 143(a); Vallone v. Commissioner, 88 T.C. 794, 796 n.3 (1987). These include the Federal Rules of Evidence. *660 Snyder v. Commissioner, 93 T.C. 529 (1989). 1. The Affidavit of Sandra Costa. Petitioner's attorney, in anticipation of trial, prepared an affidavit entitled Declaration of Sandra Costa (Exhibit 12) which was signed by petitioner under the pains and penalty of perjury. Respondent relied upon the affidavit in support of his objections to petitioner's motion to shift the burden of going forward with the evidence to respondent. During trial, the affidavit was identified and received in evidence, but its admissibility was limited to the portion relied upon by respondent for impeachment of petitioner's credibility. The parties were advised at trial that they were not precluded from arguing, on brief, other grounds for admissibility of the affidavit. On brief, respondent asserts that, with the exception of those portions of the affidavit admitted for impeachment purposes, the document as a whole constitutes inadmissible hearsay. However, respondent further contends that certain portions of the affidavit he relies upon are also admissible as statements which are not within the definition of hearsay pursuant to Fed. R. Evid. 801(d). [5] *661 *662 In his reply brief, respondent relies on paragraph (k) [6] of the affidavit in which Mrs. Costa stated that the police had found Douglas Costa's fingerprint on some of the narcotics material found at Kurt's arrest. Petitioner does not object to the admission of her affidavit. Instead, she seeks admission of the entire affidavit under Fed. R. Evid. 801(d)(1). Petitioner also asks that the Court take notice of inaccuracies in the Declaration which her attorney attempted to rectify on direct examination. During trial Mrs. Costa was permitted to testify in order to explain and correct certain statements in paragraphs (k), (p), and (y) of the document. [7] *664 Her testimony serves two purposes: First, if the affidavit, or any part of it, became a part of the record, petitioner is entitled to offer testimony to clarify the evidence. Second, her testimony *663 was given under oath and was subjected to cross-examination and is therefore a part of the record in this case without considering the admissibility of the affidavit. As to the admissibility of the affidavit, we hold that paragraph (k) of the document qualifies as an admission by a party opponent, and to the extent respondent relies on it, the paragraph is admissible pursuant to Fed. R. Evid. 801(d)(2). However, the affidavit was not made under conditions which would permit the remaining portions of it to be admissible under Fed. R. Evid. 801(d)(1). We also considered whether the remainder of the affidavit was admissible in evidence under Fed. R. Evid. 106, also known as the Rule of Completeness. In pertinent part Fed. R. Evid. 106, states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The rule is based on two considerations: First is a misleading impression that may be created by taking matters out *665 of context; and second is the inadequacy of repair work that may occur when delayed to a point later in the trial. See Advisory Committee's Note, following Fed. R. Evid. 106, citing McCormick's Handbook of the Law of Evidence, sec. 56 (2d ed. 1972). Thus, the Federal Rules of Evidence permit the introduction of additional material that is necessary to qualify, explain, or place into context the portion already introduced. United States v. Pendas-Martinez, 845 F.2d 938, 944 (11th Cir. 1988); United States v. Sutton, 801 F.2d 1346, 1369 (D.C. Cir. 1986); United States v. Dorrell, 758 F.2d 427, 434-435 (9th Cir. 1985).However, in the Ninth Circuit, Fed. R. Evid. 106 does not operate to make admissible evidence that is otherwise inadmissible. [8] *666 In United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981), cert. denied 454 U.S. 847, 454 U.S. 830 (1981), the Circuit Court held that the District Court did not abuse its discretion in refusing to admit explanatory portions of prior testimony where portions proffered by defendants were irrelevant and were inadmissible hearsay.
In the instant case, no other portion of the affidavit relates to fingerprints on the narcotics or otherwise qualifies, explains, or puts in proper context paragraph (k). Accordingly, the failure to contemporaneously consider the complete document is not misleading and we are not, therefore, required to admit the remaining portions of *667 the affidavit. United States v. Poschwatta, 829 F.2d 1477, 1483 (9th Cir. 1987), cert. denied 484 U.S. 1064 (1988); United States v. Dorrell, supra.Even assuming other portions of the affidavit were relevant to the fingerprint, they are not otherwise admissible under Fed. R. Evid. 801, and pursuant to Burreson, they are not admissible under Fed. R. Evid. 106. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).In the setting of this case we believe that the interpretation in Burreson in no way prejudices petitioner's ability to make any point which may have been contained in the affidavit. After all, petitioner testified in this case and was not prohibited from offering her testimony, either when contrary to the affidavit or otherwise. 2. Transcripts of Testimony of Sandra and Kurt Costa from the State Court Criminal Proceeding Against Kurt Costa. Sandra and Kurt Costa testified in the criminal proceedings brought by the State of California against Kurt Costa for narcotics possession. The parties stipulated to the authenticity of the transcripts and they were received as Exhibits 10-J and 11-K, respectively, subject to respondent's hearsay objection. *668 On brief, respondent seeks admission of certain portions of the transcript of Sandra Costa's testimony on the basis that they constitute admissions of a party opponent pursuant to Fed. R. Evid. 801(d)(2). This testimony relates to use of Sandra Costa's car by Mr. Costa in 1984 and her attendance at his Texas trial in 1986. [9] *669 Similarly, respondent seeks admission of portions of Kurt Costa's testimony concerning Douglas Costa's presence at the Scenic Road residence in 1984. [10] Respondent characterizes this evidence as a prior inconsistent statement pursuant to Fed. R. Evid. 801(d)(1). If admitted, the excerpts from both transcripts would be used against Mrs. Costa to prove that she and her husband were not living separate and apart for purposes of classifying assets as community property under California law and for purposes of applying section 66(a). On brief, petitioner stated that she has no objection to admission of the transcripts as prior statements of Sandra and Kurt Costa. However, petitioner further asserts that all of her prior recorded testimony is admissible under Fed. R. Evid. 801(d)(1), regardless of purpose. In order to be admissible under Fed. R. Evid. 801(d)(1), the prior testimony or statement must satisfy one of the following three conditions: (1) It is inconsistent *670 with her testimony in this Court; (2) it is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence; or (3) it involves identification of a person made after perceiving the person. Mrs. Costa's testimony in Kurt Costa's criminal proceeding was substantially consistent with her testimony in this Court and, accordingly, does not come within Fed. R. Evid. 801(d)(1). Those portions of Mrs. Costa's testimony regarding her attendance at the Texas trial and the use of her car by Mr. Costa are admissible as admissions by a party opponent under Fed. R. Evid. 801(d)(2) . The remaining portions of Mrs. Costa's transcript are inadmissible and contain nothing to place her testimony on these issues in proper perspective on the matters concerning the car and the Texas trial under the Doctrine of Completeness. See United States v. Pendas-Martinez, supra; United States v. Poschwatta, supra; United States v. Burreson, supra.
Kurt Costa's State court testimony pertinent to his father's presence at the Fairfax residence in 1984 is consistent with his testimony in this case. Accordingly, it does not come within Fed. R. Evid. 801(d)(1), and is not *671 admissible under Fed. R. Evid. 801. Additionally, because the transcript as a whole is inadmissible hearsay and because petitioner has pled no applicable exception to this Federal Rule of Evidence, we will not consider any portion of Kurt Costa's testimony in the State court criminal case. It should be noted that had the witnesses admitted that the State court transcripts were their statements and that the statements were true, petitioner could have offered the transcripts from the State court case as the adopted testimony of Sandra or Kurt Costa. The adoption would have obviated the hearsay problems raised in Fed. R. Evid. 801. 3. Testimony of the DEA Agent. During trial, Larry Lamberson was called to testify on behalf of respondent. Lamberson worked as a Federal drug enforcement agent and had participated in two undercover operations involving the purchase and sale of narcotics to and from Douglas Costa. As a result of his involvement in the undercover operations Lamberson engaged in conversations with Mr. Costa. Agent Lamberson's testimony was based upon his personal knowledge of the sophistication of Mr. Costa's drug network. Petitioner argues that the testimony of Agent *672 Lamberson regarding the sophistication of Douglas Costa's narcotics network is not relevant and does not constitute a "statement" against interest that would come within the exception to the hearsay rule pursuant to Fed. R. Evid. 804(b)(3), [11] and that his testimony should be stricken. During trial, we permitted the introduction of Agent Lamberson's testimony on the sophistication issue to establish that Douglas Costa was in the drug business in 1986 and to establish the period of time over which he was involved in this activity. However, Agent Lamberson's statements regarding the sophistication *673 of Mr. Costa's network were not, as petitioner contends, admitted as statements against interest within the meaning of Fed. R. Evid. 804(b)(3). Only Douglas Costa's statements to Mr. Lamberson admitting his involvement in smuggling activities were allowed in for this purpose. Because the sophistication of his network is relevant to the issue of whether Mr. Costa was involved in narcotics smuggling in 1984, pursuant to Fed. R. Evid. 401, [12] Agent Lamberson's testimony will be admitted. Additionally, as decided at trial, Douglas Costa's admissions as to his lengthy involvement in the smuggling business also come in pursuant to Fed. R. Evid. 804(b)(3). B. The Substantive Issues
1. The Deficiency Determination and its Presumption of Correctness. As an initial matter, petitioner contends that the Court erred in denying her motion to shift the burden of going forward with the evidence to respondent. Accordingly, we first *674 consider respondent's determination that petitioner had unreported community property income in 1984. In addressing this issue we also consider the more complicated question of whether, in an illegal income case arising in a community property jurisdiction and where no returns were filed, a proper evidentiary predicate linking a husband to an illegal income-producing activity will entitle respondent to the presumption of correctness for a statutory notice issued only against the wife. Generally, a presumption of correctness attaches to the Commissioner's deficiency determination. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Thus, a taxpayer generally bears the burden of going forward with evidence and the ultimate burden of proving the incorrectness of such determination. Welch v. Helvering, supra; Dellacroce v. Commissioner, 83 T.C. 269, 279-280 (1984).
As a general rule, courts do not look behind the notice of deficiency to examine the basis for the Commissioner's determination. Crowther v. Commissioner, 269 F.2d 292, 293 (9th Cir. 1959), affg. on this issue 28 T.C. 1293, 1301 (1957); Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-329 (1974). *675 However, we have recognized a limited exception to this rule in cases involving unreported illegal income where respondent rests solely on the presumption of correctness afforded the notice and where the taxpayer challenges the notice on the grounds that it was arbitrary (e.g., without "factual foundation" or "rational basis") and excessive within the meaning of Helvering v. Taylor, 293 U.S. 507 (1935). Jackson v. Commissioner, 73 T.C. 394, 401 (1979); Dellacroce v. Commissioner, supra.A showing that the determination is arbitrary and excessive and, therefore, not entitled to the presumption of correctness shifts the burden of going forward with the evidence to respondent. Zuhone v. Commissioner, 883 F.2d 1317, 1325 (7th Cir. 1989), affg. a Memorandum Opinion of this Court; Kluger v. Commissioner, 91 T.C. 969, 977 (1988); Berkery v. Commissioner, 91 T.C. 179, 186 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989), cert. denied 110 S.Ct. 176, 107 L.Ed.2d 133 (1989). The Court of Appeals for the Ninth Circuit has held that in order for a presumption of correctness to attach to a statutory notice in unreported illegal income cases, respondent must come forward and establish *676 some evidentiary foundation linking the taxpayer to the alleged income-producing activity or provide some substantive evidence demonstrating that the taxpayer received unreported income. Petzoldt v. Commissioner, supra at 689; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an unreported order of this Court; Adamson v. Commissioner, 745 F.2d 541, 546, 547 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672 (1977). A deficiency determination not supported by the proper evidentiary foundation is clearly arbitrary and erroneous. Weimerskirch v. Commissioner, supra at 362.In establishing the necessary evidentiary predicate, hearsay evidence may be admissible for purposes of showing that the notice was not arbitrary, particularly when that evidence is buttressed by other substantive evidence linking petitioner to an illegal income- producing activity. Avery v. Commissioner, 574 F.2d 467 (9th Cir. 1978), affg. per curiam a Memorandum Opinion of this Court; Weimerskirch v. Commissioner, supra at 362 n.7; Dellacroce v. Commissioner, supra at 284.But see Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), *677 affg. in part, revg. in part and remanding 74 T.C. 260 (1980). Once the Commissioner has carried his burden of showing a link between the taxpayer and income-producing activity or demonstrating the receipt of unreported income, the presumption of correctness attaches to respondent's notice of deficiency. The burden then shifts to the taxpayer to rebut this presumption by a preponderance of the evidence establishing that the deficiency determination is arbitrary or erroneous. Adamson v. Commissioner, supra at 547; Bradford v. Commissioner, 796 F.2d 303, 305 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Petitioner asserts that the notice of deficiency is arbitrary and erroneous and is not entitled to a presumption of correctness. Specifically she argues that she was not personally involved in narcotics trafficking and did not receive any income therefrom. Accordingly, respondent is unable to link her to an illegal income-producing activity and the notice is without factual foundation or rational basis. Alternatively, she asserts that the notice is arbitrary because respondent failed to present an evidentiary foundation linking Douglas Costa to the purchase or sale of *678 narcotics. Without this foundation, the presumption of correctness does not attach. For reasons discussed herein, we find that respondent sufficiently linked Mr. Costa to an income-producing activity and that connection provides a sufficient evidentiary basis for the deficiency determined against Mrs. Costa for her share of the couple's community property income. The currency and narcotics income listed in the statutory notice issued to petitioner are based on respondent's determination that these items represented income to Douglas Costa and were also the community property of Douglas and Sandra Costa, one-half of which was taxable to Mrs. Costa. In this regard, respondent only offered evidence of an illegal source of income. A married individual is taxable on the earnings of his or her spouse to the extent that the laws of the State of residence grant that individual a vested property or ownership interest in the spouse's earnings. United States v. Mitchell, 403 U.S. 190, 196-197 (1971); United States v. Malcolm, 282 U.S. 792 (1931); Edwards v. Commissioner, 680 F.2d 1268, 1271 (9th Cir. 1982), affg. per curiam and unreported order of this Court. Under California law, a wife *679 has a "present, existing and equal" interest in the community. Cal. Civ. Code sec. 5105 (West 1983); Estate of Murphy v. Murphy, 15 Cal. 3d 907, 544 P.2d 956 (1976); Estate of Gasser v. Commissioner, 93 T.C. 236, 241 (1989).This statutory right creates a vested interest in community property sufficient to establish her liability for Federal income tax on her half of the community income. United States v. Malcolm, supra.
While not specifically addressing or analyzing a "Weimerskirch-type" of evidentiary linkage to petitioner wife, other cases indicate that a husband's actions generating community property income may serve as a basis for a separate statutory notice issued to his wife imputing one-half of that income to her. See, e.g., Johnson v. Commissioner, 72 T.C. 340 (1979) (husband's embezzlement activities were basis for issuing individual notice of deficiency to wife for half of the illegal income under Texas community property law); Saavedra v. Commissioner, T.C. Memo. 1988-587 (husband's embezzlement activities were predicate for separate statutory notice issued to wife for one-half of the illegally obtained income under Arizona community property); Rimple v. Commissioner, T.C. Memo. 1985-245 *680 (involvement by taxpayer wife and/or her husband in three businesses was sufficient to link taxpayer wife to husband's unreported community property business income determined in statutory notice issued only to wife.) See also Stewart v. Commissioner, T.C. Memo. 1990-264 (evidence linking husband to illicit manufacture of controlled substance was sufficient to give notice of deficiency issued to the wife the presumption of correctness). In this case, all of petitioner's income was generated by the efforts of Douglas Costa and all of the income was community property. Douglas Costa is presently unavailable to contest the deficiency determined against him and petitioner. Under these circumstances, and in light of Mrs. Costa's automatic vested right in one-half of the community income, we find that for purposes of establishing an evidentiary predicate in an unreported illegal income case, a husband's actions may serve as a basis for a deficiency notice imputing income to his wife under community property laws. However, in contesting a statutory notice based solely on her husband's income-generating activities, the wife may assert and is in fact subrogated to any and all of her husband's *681 defenses and evidentiary entitlements. Since a proper evidentiary foundation as to Douglas Costa will give Mrs. Costa's notice of deficiency a presumption of correctness, we must determine whether respondent has adequately linked Mr. Costa to an illegal income-producing activity. Substantial evidence links Mr. Costa to narcotics trafficking and permits an inference that he was trafficking drugs in 1984. Weimerskirch v. Commissioner, supra at 361; Adamson v. Commissioner, supra at 547. Although he was not present at the December 1984 arrest of his son, drugs and currency were found in an automobile he owned, as well as his canes and laundry. His fingerprints were found on the narcotics contained in the car. Other evidence linking Douglas Costa to the narcotics included Kurt Costa's statement in the police report that "None of the stuff in this car belongs to me. It belongs to my Dad." Avery v. Commissioner, supra.Also supporting an inference that Mr. Costa was selling narcotics in 1984 is Mr. Costa's use of cash and cashier's checks to pay household expenses and the use of cash in multiple amounts each of which was less than $ 10,000 to acquire assets whose value exceeded $ 10,000. *682 Treasury reporting requirements are triggered by expenditures of $ 10,000 or more. See 31 C.F.R. sec. 103 et seq. (1990). Other related events during 1986 also link Mr. Costa to narcotics trafficking in 1984. In July 1986, Doug Costa was convicted on narcotics charges. In June 1986, Mr. Costa admitted to Agent Lamberson that he had been involved in narcotics smuggling for several years. This admission is corroborated by the sophistication of his drug network which apparently took several years to create. We find it significant that Mr. Lamberson, based upon his experience, placed Mr. Costa in the business of buying and selling narcotics only 18 months subsequent to Kurt Costa's December 1984 arrest. See Petzoldt v. Commissioner, 92 T.C. at 690; United States v. Heyward, 729 F.2d 297, 301 (4th Cir. 1984), cert. denied 469 U.S. 1105 (1985) (evidence that defendant's plane was found in 1980 loaded with marijuana was admissible to substantiate the Government's net worth claims of illegal income for 1978 and 1979). On the basis of these facts, we find that evidence sufficiently links Douglas Costa to an illegal income-producing activity in 1984 and it, in turn, provides respondent's *683 determination with a presumption of correctness as to Mrs. Costa's deficiency notice. Petitioner offered no proof to rebut the connection established by respondent between Mr. Costa and the narcotics trafficking activity. Other than asserting that no link exists between herself and the activity or between her husband and the activity, she offered no proof that her husband was not involved in drug trafficking in 1984. She presented no witnesses to testify regarding any legitimate sources of income or regarding Mr. Costa's construction and real estate activities in 1984. Additionally, she did not otherwise establish that Mr. Costa did not make the expenditures at issue. Accordingly, Mrs. Costa has failed to convince us that the notice was arbitrary or excessive. Therefore, respondent's deficiency notice is entitled to a presumption of correctness and petitioner bears the burden of proving that respondent's determination is incorrect. 2. Correctness of Respondent's Income Determination. To prevail, petitioner must demonstrate that respondent's income determination is erroneous. Rule 142(a). In addressing the correctness of respondent's determination, petitioner makes essentially *684 four arguments: (1) Respondent incorrectly used an indirect method of income reconstruction; (2) respondent incorrectly used the Bureau of Labor Statistics to estimate the personal living expense component of the notice; (3) because the income in dispute was either illegal or separate property, neither of which constitutes community property under California law, the income is from a nontaxable source; and (4) petitioner is entitled to relief under section 66, the applicability of which renders the community property at issue nontaxable to her. (a) Income Reconstruction and Use of Bureau of Labor Statistics.
Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liability. In the absence of such records, respondent may compute the taxpayer's income by a method which clearly reflects income. Sec. 446(b); Petzoldt v. Commissioner, supra at 695.Respondent is permitted to use indirect methods of proof to reconstruct income, particularly where the taxpayer files no returns and refuses to cooperate in the ascertainment of his income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Respondent determined petitioner's deficiency using the source *685 and application of funds method (cash expenditures method). Use of this indirect method has been sanctioned by the Supreme Court. United States v. Johnson, 319 U.S. 503 (1943).Proper use of the cash expenditures method requires that respondent either present evidence of a likely source of currently taxable income, or negate nontaxable sources of income. He must also investigate relevant leads furnished by the taxpayer which are reasonably susceptible of being traced and which may show alternative sources of nontaxable income. United States v. Massei, 355 U.S. 595 (1958); Holland v. United States, 348 U.S. 121, 138 (1954); DeVenney v. Commissioner, 85 T.C. 927, 931 (1985). A deficiency determined by use of the cash expenditures method is presumptively correct, and the burden of proof is upon the taxpayer to demonstrate otherwise. Welch v. Helvering, supra; Parks v. Commissioner, 94 T.C. 654 (1990); Burgo v. Commissioner, 69 T.C. 729, 743 (1978). To meet her burden, petitioner must show that someone else made the expenditures, or that the funds were obtained from nontaxable sources, e.g., loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. See *686 Taglianetti v. United States, 398 F.2d 558, 563 (1st Cir. 1968), affd. 394 U.S. 316 (1969). In unreported income cases, respondent may utilize the Bureau of Labor Statistics as a basis for computing the personal living expense component of a deficiency notice. Burgo v. Commissioner, supra at 749; Giddio v. Commissioner, supra at 1532. Petitioner contests respondent's use of the cash expenditures method and argues that he failed to ask her what her income was prior to employing an indirect method to reconstruct her income. She also insists that Agent Thatcher had knowledge of the collection case pending for tax year 1982. Petitioner apparently argues that respondent, during the investigation of the collection case, could have obtained information leading to evidence about 1984 income, thereby rendering an indirect income reconstruction method unnecessary. Respondent was not under any obligation, legal or otherwise, to evaluate or determine petitioner's community property income during a prior year's collection proceeding. However, the evidence indicates that Agent Thatcher was unaware of the collection case at the time of his investigation and as a matter of routine would not have *687 discovered this information prior to making his income determination. Moreover, in cases where income is from illegal sources, the use of reconstruction has been sanctioned because of the surreptitious modus operandi of the taxpayer. The evidence reviewed by Agent Thatcher in determining whether to reconstruct income demonstrates a likely source of illegal income. Additionally, Revenue Agent Thatcher made an effort to obtain all internal records on the case and to contact petitioner for her records. Agent Thatcher attempted to reach the Costas on five or six occasions. However, certified letters mailed to the Costas were returned unclaimed. Given the taxpayer's lack of contact, the lack of records, and the lack of a 1984 return, we find that respondent was justified in reconstructing petitioner's income and in the use of the cash expenditures method. Petitioner contends that respondent, by including living expenses based on the Bureau of Labor Statistics in the total cash expenditures, has used two different methods of income reconstruction. She argues that respondent's approach effectively results in a duplication of living expense income because if petitioner had the amount *688 of narcotics income imputed to her by respondent it would be more than sufficient to cover the personal living expenses determined under the Bureau of Labor Statistics method. There is no dispute that respondent may add statistically based personal living expenditures to actual cash expenditures under the cash expenditures method. Burgo v. Commissioner, supra. Petitioner's argument here assumes that the personal living expenditures were duplicated and/or included as part of one of the other items. With respect to expenditures, petitioner's position is inherently incorrect. With respect to the cash and drugs found in the car, they represent either unspent funds or possible expenditures for acquisition, but in neither case could they represent or be a duplication of personal living expenses. (B) Separate Property and Illegal Income UnderCalifornia Community Property Law.
Petitioner does not dispute the amount or calculation of other items in the notice. Instead, she argues that the reconstructed income was earned by her husband while they lived separate and apart or it was generated by his illegal enterprise and neither type of income constitutes community income under California *689 law. Thus, if the income items are not community property, then they are not taxable to her. Under California law, community property is defined as property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either. Cal. Civ. Code sec. 687 (West 1982). See also Cal. Civ. Code sec. 5110 (West 1983). The earnings of the husband during marriage are the parties' community property. People v. Rainville, 39 Cal. App. 3d 982, 114 Cal. Rptr. 902, 905 (1974); People v. Lockett, 25 Cal. App. 3d 433, 439, 102 Cal. Rptr. 41 (1972).Conversely, "The earnings and accumulations of a spouse * * * while living separate and apart from the other spouse, are the separate property of that spouse." Cal. Civ. Code sec. 5118 (West 1983). Whether the parties are separated within the meaning of Cal. Civ. Code sec. 5118 is a question of fact. Feldman v. Nassi, 111 Cal. App. 3d 881, 169 Cal. Rptr. 9, 12 (1980). However, the term "separate and apart" refers to that condition when spouses have come to a parting of the ways with no present intention of resuming marital relations. In Re Marriage of Imperato, 45 Cal. App. 3d 432, 119 Cal. Rptr. 590 (1975); *690 Makeig v. United Security Bank & Trust Co., 112 Cal. App. 138, 296 P. 673, 675 (1931).The issue is whether the parties' conduct evidences a complete and final break in the marital relationship. In Re Marriage of Marsden, 130 Cal. App. 3d 426, 181 Cal. Rptr. 910, 914 (1982); In Re Marriage of Baragry, 73 Cal. App. 3d 444, 140 Cal. Rptr. 779, 781 (1977).Pursuant to California case law, the following behavior demonstrates a lack of intent to conclusively terminate the marital relationship: The failure of the parties to complete legal actions terminating the marriage; joint traveling, vacations or other social outings undertaken by the spouses during the alleged period of separation; continuous and frequent visits with the spouse and family; the exchange of gifts between the spouses; undertakings of joint responsibilities such as the filing of a joint return; use of the marital address by the allegedly separated spouse. In Re Marriage of Marsden, 181 Cal. Rptr. at 914; In Re Marriage of Baragry, 140 Cal. Rptr. at 780-781. We are unpersuaded that petitioner and Douglas Costa had a "parting of the ways" with no present intention of resuming marital relations. Despite their history of *691 separations, the Costas never took steps to secure a final divorce. During the year in question, Mr. Costa had access to the house, kept clothes there, used the residence as a mailing address, and received messages there. The couple also maintained several joint accounts and undertook several joint transactions during the alleged period of separation. Mr. Costa made some estimated payments of potential joint income tax and all of the household expenses. Moreover, the couple had traveled together both before and after 1984. Mr. Costa, in years prior to 1984, provided petitioner with "gift vacations." During the period 1984 through 1986, Mrs. Costa also visited her husband in prison and attended his drug trial. Based on these facts, we find that the Costas were not living separate and apart in 1984. Accordingly, the income generated during that year was not the separate property of Mr. Costa. Petitioner argues that she and her husband intended prior to 1984 that all property and income would be considered separate property. Specifically, she points to testimony at trial regarding the separation of their property interests as evidence of an agreement to orally transmute community *692 property to separate property. Separate property may be converted into community property or vice versa at any time by oral agreement between the spouses. Beam v. Bank of America, 6 Cal. 3d 12, 98 Cal. Rptr. 137, 490 P.2d 257 (1971); Woods v. Security First National Bank, 46 Cal.2d 697, 299 P.2d 657, 659 (1956). To be valid under California law, the agreement must be shown by "clear and convincing evidence" or "clear and decisive proof." Somps v. Somps, 250 Cal. App. 2d 328, 58 Cal. Rptr. 304, 310 (1967); United States v. Brodie, 858 F.2d 492, 499 (9th Cir. 1988); Estate of Vogel v. Commissioner, 30 T.C. 125, 131-132 (1958), affd. 278 F.2d 548 (9th Cir. 1960); Schmitz v. Commissioner, T.C. Memo. 1983-482.If recognized under State law, the transmutation will be effective for Federal tax purposes. Helvering v. Hickman,70 F.2d 985 (9th Cir. 1934); Estate of Vogel v. Commissioner, supra.
Petitioner alleges that in 1982, she and Mr. Costa entered into an oral agreement whereby they would go their separate ways and half of whatever they had accumulated would belong to him and half would belong to her. The only evidence of this agreement is petitioner's testimony at trial. Other than *693 petitioner's testimony, she has not shown by clear and convincing evidence or decisive proof that the Costas agreed to transmute their property from community property to separate ownership. During the years 1982 through 1984, Mr. and Mrs. Costa kept joint bank accounts and jointly entered into several transactions. Additionally, Sandra Costa had no outside source of income in these years and was supported by Douglas Costa. This evidence requires us to conclude that a valid transmutation did not occur. United States v. Brodie, supra at 499; Schmitz v. Commissioner, supra.
Petitioner also seeks to persuade us that illegal income is, per se, not community property under California law. Citing Karageris v. Karageris, 145 Cal. App. 2d 556, 302 P.2d 850, 852 (1965), she asserts that "a person cannot acquire property by his own crime." Therefore, she argues, it follows that Mr. Costa cannot "acquire" drug trafficking property for community property purposes. In Karageris, the husband was either holding property for his brother or had misappropriated the property from his brother's business. In the divorce proceeding at issue, petitioner wife sought to have these funds classified as *694 community property. Noting that title to personal property fraudulently or feloniously obtained does not pass to the wrongdoer, the District Court held that the wife would have no community property interest in any assets her husband may have held by misappropriation. Karageris v. Karageris, supra at 852-853. In the instant situation, we are dealing with illegal income. We are not, however, concerned with funds illegally obtained through theft or embezzlement where the quality of the wrongdoer's title is at issue. We have no doubt that any right, title, and interest in the drugs and illegal currency became vested in Mr. Costa upon their receipt and were "acquired" for community property purposes. See Johnson v. Commissioner, 72 T.C. at 344; Franklin v. Franklin, 67 Cal. App. 2d 717, 155 P.2d 637, 641 (1945).Accordingly, we do not accept Karageris as persuasive authority for the proposition that illegal income is not community property under California law. As far as we can determine, California statutory and case law do not distinguish between legal and illegal community property income. However, cases do provide that where illegal income is at issue, the illegality of the income *695 is not a defense to community property division. In Re Marriage of Shelton, 118 Cal. App. 3d 811, 173 Cal. Rptr. 629, 632 (1981).Thus, regardless of the illegal character of the income, we conclude that the income represented by the narcotics and currency found in Mr. Costa's car was community property, one-half of which is taxable to petitioner. (c) Application of Sections 66(a) and 66(c). Petitioner asserts that the items of income reconstructed from expenditures are not taxable to her pursuant to the relief provisions of section 66(a) and (c). Section 66(a) mitigates against liability for Federal income tax on community property income that is earned by one spouse but does not benefit or is not received by an abandoned spouse. S. Rept. 96-1036 (1980), 1980-2 C.B. 723. Under the statute, the spouse generating earned income or partnership and business income is generally responsible for the tax on such income if the following requirements are met: (1) The individuals are married at some time during the calendar year; (2) the individuals live apart at all times during the calendar year; (3) they do not file a joint return for a taxable year beginning or ending in the calendar year; *696 (4) one or both of the individuals have earned income for the calendar year which is community income; and (5) no portion of the earned income is transferred (directly or indirectly) between the individuals before the close of the calendar year. Sections 66(a), 879(a), 1402(a)(5). The parties stipulated that the Costas were married throughout 1984 and that they did not file a joint return for that year. However, taken as a whole, the facts indicate that the Costas did not live apart at all times during the year as required by statute. Douglas Costa resided at the Scenic Road address intermittently in 1984 as evidenced by the fact that he kept clothes and documents there, received messages there, and came and went as he wished. Since this prerequisite is not satisfied, petitioner is not entitled to relief under section 66(a). Petitioner also seeks relief under section 66(c). Under this section, items of community income are not included in a spouse's gross income where all of the following four requirements are met: (1) The spouse seeking relief did not file a joint return for any taxable year; (2) the income item omitted from the gross income of the spouse seeking relief would *697 be treated as the income of the other spouse under section 879; (3) the spouse seeking relief establishes that she did not know of and had no reason to know of such item of community income; and (4) under the facts and circumstances, it is inequitable to include such item of community income in the income of the spouse seeking relief. All four requirements must be met before relief can be granted. Roberts v. Commissioner, 860 F.2d 1235, 1238 (5th Cir. 1988), affg. a Memorandum Opinion of this Court. The parties have stipulated that no returns (joint or separate) were filed for or on behalf of petitioner. Moreover, respondent, on brief, admits that the second requirement of section 66(c) is not in dispute. However, respondent argues that petitioner has not met the third and fourth requirements of section 66(c). Specifically, he argues that petitioner knew or had reason to know of the items of community income because: (1) she knew that Douglas Costa was engaged in income-producing activities involving real estate and construction; (2) she knew that money had been given to the couple's son and that household expenses were being paid by Douglas Costa; and (3) she knew that Kurt Costa *698 was arrested on December 5, 1984, while driving Mr. Costa's automobile containing narcotics and cash. The third requirement of section 66(c) concerns whether petitioner "did not know of, and had no reason to know" of such "item of community income." On the basis of contraband seized during Kurt Costa's 1984 arrest, and on the basis of Douglas Costa's 1986 arrest, respondent placed Mr. Costa in the drug business in 1984. Respondent also reconstructed what may have been Douglas Costa's income based on 1984 cash expenditures. These imputed expenditures were subsequently determined by us to represent community income. However, our finding that these items represented community income which may be taxable to petitioner in no way implies that petitioner had knowledge of such income or its source. We must consider all of the facts and circumstances in the record in order to decide whether petitioner knew or had reason to know of this income. The standard for determining whether a "community property spouse" knew or had reason to know of items of community income has not been specifically defined in the statute, regulations, or case law. In the 14 years since the effective date of section 66 *699 and the 6 years since enactment of section 66(c), only a few cases have been decided under that section of the Code. Each of the opinions is factually oriented and does not specifically establish or discuss the standard to be used in determining whether the taxpayer in that case knew or had reason to know of the items of community income. See Thatcher v. Commissioner, T.C. Memo. 1988-537; Roberts v. Commissioner, T.C. Memo. 1987-391, affd. 860 F.2d 1235 (5th Cir. 1988); Nelson v. Commissioner, T.C. Memo. 1987-369; Baldwin v. Commissioner, T.C. Memo. 1986-342; Bozek v. Commissioner, T.C. Memo. 1986-37; Sanders v. Commissioner, T.C. Memo. 1986-26, affd. without published opinion 812 F.2d 715 (9th Cir. 1987), cert. denied 484 U.S. 830 (1987); Rimple v. Commissioner, T.C. Memo. 1985-245. In each of those cases, the "innocent spouse" was found to have actual knowledge of the transactions or business activity through objective or subjective knowledge reflected in the record. [13] In those cases, the Court found that the "innocent spouse" understood, was aware of, and/or participated in the activity of the income earning spouse. Further, in some of the cases, the Court found that the "innocent *700 spouse" understood that the type of activity engaged in by the income earning spouse generated income. In each instance, it was clear from the opinion that the "innocent spouse" had sufficient experience and understanding of the activity to be chargeable with knowledge of income from it. We note here that when respondent determines the receipt of income by use of an expenditures reconstruction method, this same analysis should apply. Knowledge of "items of community property" is determined with reference to knowledge of a particular income-producing activity and not with respect to knowledge of specific income items (expenditures) listed in the notice of deficiency. This is so because items that were considered by respondent to reconstruct income do not necessarily or per se cause petitioner to be on notice of income. In this case, although there was sufficient evidence of companionship *701 to warrant a finding that petitioner and Douglas Costa were not living separate and apart for California community property purposes, as a practical matter, the Costas did not have a relationship the nature of which would compel us to attribute knowledge of Mr. Costa's activities between them. Although Douglas Costa had access to petitioner's residence, generally, he was a visitor using the residence to store clothing and papers. When the residence was searched under a warrant, no evidence of drug trafficking (either drugs or records concerning drugs) was found by the authorities. In these circumstances it is not likely that petitioner became aware of Douglas' illegal activity until December 5, 1984. Moreover, her knowledge at that time may have been enough to suspect or connect the activity with her husband, but it was not sufficient for her to have "reason to know" of the illegal income activity on the part of her spouse. Petitioner believed that her husband was in the construction business, but she had no knowledge of his activity in that regard and/or whether it could or did generate income. She testified that she believed that Douglas paid the monthly expenses of about $ *702 800 from construction or real estate related activity but she was not in a position to know and did not know whether Douglas was actually engaged in real estate or construction activity during 1984. It was, however, reasonable for her to make such an assumption and we find this to be a reasonable explanation by petitioner. Moreover, considering the amount of household money provided by Douglas and assuming petitioner was knowledgeable about items such as his $ 25,000 partnership contribution, these amounts do not seem extraordinary or of an amount which would provide petitioner a basis for knowledge of a much larger source of income than she had experienced in times prior to December 5, 1984, when the large sum of cash and drugs was discovered in Douglas' automobile. Additionally, the proceeds received from the 1982 sale of the couple's joint venture property were sufficient to cover the few "extraordinary" items in this case. Other factors which distinguish this case from previous decisions under section 66(c) include the fact that the lifestyle of petitioner did not change or improve during the period under consideration. She continued to receive $ 800 a month for household expenses *703 and had no other income or source of income of her own. Additionally, many of the income items did not benefit petitioner or the marital community. For instance, none of the money or drugs found in the automobile went to the support of the community since they were seized as evidence and/or as contraband. Of the other items listed in the income reconstruction, only the estimated tax payments ($ 18,000) and the Mercedes Benz automobile ($ 60,742) could possibly have been considered community property in the sense that they may have benefitted petitioner. However, from a practical standpoint, the automobile was not available to petitioner and the estimated tax payments, which are de minimis in relation to the total expenditures/income, were not available for petitioner's living expenses. Also, since no return (joint or otherwise) was filed, petitioner never received or claimed any direct benefit from said payments. Accordingly, applying those criteria utilized by the section 66(c) case law, we find the Sandra Costa did not have reason to know of the items of community income. In enacting section 66(c), Congress mandated that relief may be granted under regulations promulgated by *704 the "Secretary [of Treasury]." Although section 66 was added as part of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 803, respondent has not, to date, issued any regulations (proposed, temporary or final) on section 66(c). We note, however, the legislative history regarding the statute which explains that section 66(c) was added to liberalize innocent spouse relief by expanding it to additional circumstances (including community property situations where no return has been filed). H. Rept. 98-432, Pt. 2 (1984); H. Rept. 98-861 (1984), 1984-3 (Vol. 2) C.B. 1. Thus, it is the congressionally intended purpose of section 66(c) to treat an innocent spouse in a community property jurisdiction (whether a return has or has not been filed) equally or on a par with an innocent spouse who is not subject to community property laws. Given this congressional intent and the lack of regulatory guidance under section 66(c), we consider whether the standards established under section 6013(e)(1)(C) would be of assistance by way of analogy. Section 66(c)(3) contains substantially similar language to section 6013(e)(1)(C), which requires the innocent spouse to establish "that in signing the *705 return he or she did not know, and had no reason to know, that there was such substantial understatement ." (Emphasis supplied.) The same operative language is used in both sections to define the generalized objective and subjective tests. Accordingly, the case law and interpretation of that standard will be of assistance in interpreting the language of section 66(c). Under section 6013(e)(1)(C) it is not enough to merely show a lack of actual knowledge. A taxpayer must also show that he or she had no reason to know of the understatement. Adams v. Commissioner, 60 T.C. 300 (1973); Sonnenborn v. Commissioner, 57 T.C. 373 (1971).In order to prove that one had no reason to know, one must convince the trier of fact that a reasonably prudent person with an equal level of knowledge of surrounding circumstances would not and should not have known of the omissions (income), keeping in mind his or her level of intelligence, education, and experience. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975).In Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979), we stated that "the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at *706 the time of signing the return could be expected to know" of the understatement. Applying the standard utilized under section 6013(e)(1)(C) we would likewise hold that petitioner is an innocent spouse. Petitioner had less than a high school education, was not knowledgeable about Douglas Costa's 1984 business matters, and was not aware of Douglas Costa's drug trafficking activity until sometime after the December 5, 1984, arrest of her son. Additionally, petitioner's standard of living did not improve or change during the period under consideration. Her husband was an intermittent visitor to the residence where she and her son resided. Their relationship was not of the nature to support a finding that knowledge of Mr. Costa's personal and business affairs passed between them. Accordingly, it is clear that Douglas Costa did not share business-related information with petitioner. Under these circumstances we find that a reasonably prudent person in Sandra Costa's circumstances would not have known of the items of community income. As to the fourth requirement of section 66(c), we find that under the facts of this case it would be inequitable to hold petitioner liable for tax on her *707 spouse's ill-gotten income from which she received little if any direct benefit. C. The Additions To Tax. Respondent determined additions to tax against petitioner under sections 6651(a)(1), 6653(a), 6654, and 6661. Petitioner would bear the burden of proof with respect to such determinations. Rule 142(a); Clayden v. Commissioner, 90 T.C. 656, 677 (1988); Abramo v. Commissioner, 78 T.C. 154, 162-164 (1982). Each of these additions to tax is dependent upon the existence of a deficiency in tax. Because we have decided that petitioner is an "innocent spouse" within the meaning of section 66(c), there would be no deficiency for the 1984 taxable year. Accordingly, it is not necessary to consider the arguments of the parties regarding the additions to tax. Because respondent conceded (under section 66) the 1986 deficiency determined with respect to petitioner and to reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years at issue, and all rule references are to the Tax Court Rules of Practice and Procedure.
2. Additionally sections 6653(a)(2) and 6653(a)(1)(B) would be applicable for the taxable years 1984 and 1986, respectively.↩
3. Respondent, pursuant to sec. 66, conceded petitioner's liability for the deficiency in and additions to tax determined for the tax year 1986. Respondent also conceded that to the extent he prevails in this case, a $ 9,000 prepayment credit is to be taken into account in computing the sec. 6661 addition to tax for the year 1984. Finally, petitioner abandoned but does not concede that the currency and drugs that were forfeited to the State of California are deductible in 1984.
4. Although respondent included this amount as part of the income reconstruction for 1984, this amount is questionable because it may have been attributable to the proceeds of a sale of realty in 1982. There was no showing, however, whether the $ 5,000 in question was actually from the 1982 proceeds or generated from income sources of Mr. Costa during 1984. Due to our ultimate holding in favor of petitioner, it is not necessary to address this discrepancy.
5. In pertinent part, Fed. R. Evid. 801(d) reads as follows: (d) Statements which are not hearsay. A statement is not hearsay if -- (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
6. Paragraph (k) states as follows: "The police did not arrest Douglas for several years. I understand that the police found an unknown fingerprint on some of the narcotics material found at my son's arrest. They later identified this fingerprint as Douglas'."↩
7. With respect to paragraph (k), see supra note 6. Paragraph (p) contains the following statement: "During our marriage, Douglas took charge of preparing and filing income tax returns. I think he signed the papers. He told me that returns were being filed. I believed him. I had no reason not to believe him." In pertinent part, paragraph (y) contains the following statement: "1984: 01/20 - 1984 Mercedes Benz 500SEL $ 60,742. I did not give any money to the purchase of this automobile. Douglas told me that he won this auto in a lottery. He and three or four other people made a sports bet. He won. I was asked at one time about signing papers for this automobile. I do not know if I ever signed them. I rode in the automobile several times."
In attempting to correct paragraph (k), Mrs. Costa testified that what she actually stated was "Good luck with Kurt; there's no fingerprints on anything." In attempting to correct paragraph (p), petitioner testified that she was in fact aware that returns were not properly filed. In attempting to rebut her statement in paragraph (y) that she was asked at one point to sign the car purchase documents, she stated that she did not sign the documents and was unaware that her name was on them until Dec. 1984.
8. There are conflicting Circuit Court decisions on whether the rule makes admissible parts of a document that otherwise would be inadmissible under the Rules of Evidence. Following 21 C. Wright & K. Graham, Federal Practice and Procedure, pars. 5072, 5078 (1977 & Supp. 1990), several courts have held that Fed. R. Evid. 106 can fulfill its function adequately only if otherwise inadmissible evidence can be admitted under the rule. See, e.g., United States v. Sutton, 801 F.2d 1346 (D.C. Cir. 1986). This analysis emphasizes the rule's provision that any other portion may be admitted, with the only stated limitation being that the other portion in fairness ought to be admitted. Fed.R.Evid. 106. Other circuits, including the Ninth, have followed 1 J. Weinstein & M. Berger, Weinsteins' Evidence, par. 106[02], p. 106-13 (1989 & Supp. 1990), to hold that Rule 106↩ addresses only an order of proof problem and does not make admissible what is otherwise inadmissible.
9. Regarding Mr. Costa's use of the car, the State transcript provides as follows: "Q. Where was your car if you knew that night?" "A. My husband had it." Regarding Mrs. Costa's attendance at the Texas trial, the transcript states: "Q. Did there come a time where you saw your husband in Texas?" "A. Yes." "Q. And in what status was he then?" "A. He was in prison." "Q. With reference to the date of your son's arrest, when would that have been that you saw him in prison in Texas?" "A. Oh, it was probably the first part of August, sometime around there because I couldn't get to see him because he was arrested July 1st." "Q. Do you now recall what year that was?" "A. '86."↩
10. Regarding Kurt Costa's testimony on this point, the State transcript includes the following: "Q. Calling your attention back to December 5th of 1984, how old were you then?" "A. I was 19 years old at the time." "Q. Where did you reside?" "A. I was living up on Scenic Road in Fairfax." * * * "Q. Who lived there with you?" "A. Who lived there then with me was myself, my mother and my father occasionally."↩
11. In pertinent part, Fed. R. Evid. 804(b) provides as follows: (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. * * *↩
12. Rule 401. Definition of "Relevant Evidence" "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.↩
13. In Roberts v. Commissioner, T.C. Memo. 1987-391, affd. 860 F.2d 1235↩ (5th Cir. 1988), the "innocent spouse" was found to have knowledge with respect to some of the transactions and not with respect to others. Accordingly, she was afforded relief with respect to some and not with respect to others.